**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| United States of America,<br><br>                            Plaintiff,<br><br>        -v-<br><br>Jonathan Curshen,<br><br>                        Defendant. | 2:25-cr-326<br>(NJC) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

Before the Court is Defendant Jonathan Curshen's motion for early termination of supervised release pursuant to 18 U.S.C. § 3583(e)(1). (Mot. ("Motion"), ECF No. 12.) Curshen's Motion is supported by the Probation Department of the Eastern District of New York (Resp. to Early Term. ("Probation Letter"), ECF No. 16) and is unopposed by the Government (ECF No. 13). For the reasons set forth below, the factors recognized by Congress as permitting a Court to grant early termination of supervised release weigh strongly in favor of early termination of Curshen's remaining period of supervised release. Accordingly, Curshen's Motion is GRANTED.

**BACKGROUND**

On September 13, 2011, Curshen was convicted of conspiracy to commit securities fraud and commercial bribery in violation of 18 U.S.C. § 371 in the Southern District of New York ("SDNY"). (Judgement at 1, *United States v. Curshen* ("*Curshen I*"), No. 09-cr-00033 (S.D.N.Y., Sept. 14, 2011), ECF No. 74; *see also* Probation Letter at 1.) He was sentenced to sixteen months of incarceration followed by two years of supervised release, a $100 special

assessment, and a $10,000 fine. (Judgment at 3, *Curshen I*, No. 09-cr-00033, ECF No. 74; Probation Letter at 1.) The terms of Curshen's supervised release include the following special conditions: (1) mental health treatment; (2) full financial disclosure; and (3) a restriction on incurring new debt. (Judgment at 4, *Curshen I*, No. 09-cr-00033, ECF No. 74; Probation Letter at 1.)

On May 11, 2012, Curshen was also convicted of conspiracy to commit mail fraud, wire fraud, and securities fraud under 18 U.S.C. § 371, mail fraud under 18 U.S.C. § 1341, and conspiracy to commit money laundering under 18 U.S.C. § 1956(h), in a separate case in the Southern District of Florida. (ECF No. 1 at 1; Probation Letter at 1.) For the 2012 conviction, Curshen was sentenced to 240 months of incarceration followed by three years of supervised release to run concurrently with the SDNY sentence, a $400 special assessment, and restitution in the amount of $808,373.32. (*See* Judgment, *United States v. Curshen et al* ("*Curshen II*"), No. 11-cr-20131, (S.D. Fla., May 14, 2012), ECF No. 362; *Id.*) The terms of Curshen's supervised release include the following special conditions: (1) full financial disclosure; (2) mental health treatment; (3) a restriction on incurring new debt; (4) a restriction prohibiting Curshen from owning, operating, acting as a consultant, being employed in, or participating in any manner in any "related concern" during the period of his supervision; (5) a self-employment restriction; and (6) substance abuse treatment. (*See* Judgment at 1, *Curshen II*, No. 11-cr-20131, ECF No. 362; *see also* Probation Letter at 1.)

On October 21, 2025, this Court accepted the Southern District of Florida's Transfer of Jurisdiction of Curshen's criminal case number 11-cr-20131, and the case was accordingly reassigned and renumbered 25-cr-326 on this Court's docket. (ECF No. 2.) On March 10, 2026, the Southern District of New York initiated a Transfer of Jurisdiction for docket number 09-cr-

344 to this Court's docket, and the case was accordingly reassigned and renumbered 26-cr-047.

Curshen's term of supervised release on docket number 25-cr-326 is scheduled to terminate on

December 19, 2027, while his supervised release on docket number 26-cr-047 is scheduled to

terminate on December 19, 2026.

On May 11, 2026, Curshen filed the motion presently before the Court, seeking early

termination of his supervised release. The Government filed a letter indicating that it does not

oppose the motion on May 22, 2026. (ECF No. 13.) Nor does the government dispute any of the

facts set forth in Curshen's Motion. (*See id*.) On June 3, 2026, the Probation Department

submitted a letter supporting Curshen's motion. (*See* Probation Letter.)

### LEGAL STANDARDS

"The purpose of supervised release is not to punish the defendant, as with a prison

sentence, but to assist in the defendant's rehabilitation and transition back into the community

after incarceration." *United States v. Morgan*, 820 F. Supp. 3d 203, 212 (E.D.N.Y. 2026); *see*

*also United States v. Hutchinson*, 577 F. Supp. 3d 134, 135 (E.D.N.Y. 2021) (finding that the

"legislative history [of supervised release] is informative and important," and "clearly

states . . . '*the primary goal of such a term is to ease the defendant's transition back into the*

*community* after the service of a long prison term'") (citing S. Rep. No. 98-225, at 124 (1983))

(emphasis in original). Under 18 U.S.C. § 3583(e) ("Section 3583(e)"), a court may "terminate a

term of supervised release and discharge the defendant released at any time after the expiration

of one year of supervised release . . .  if it is satisfied that such action is warranted by the conduct

of the defendant released and the interest of justice[.]" 18 U.S.C. § 3583(e)(1).

In assessing an application for early termination of supervised released, a court must

consider certain factors set forth in 18 U.S.C. § 3553(a) ("Section 3553(a)") that are specifically

3

identified in Section 3583(e). *See Rivera-Perez v. Stover*, 171 F.4th 196, 208 (2d Cir. 2026) ("18

U.S.C. § 3583(e)(1) . . . allows a court . . . to terminate a term of supervised release, but only

after considering certain enumerated Section 3553(a) factors, and only after one year of time

served on supervised release."). These factors include:

- "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1);

- the "need for the sentence imposed" to "afford adequate deterrence to criminal conduct," *id*. § 3553(a)(2)(B), "to protect the public from further crimes of the defendant," *id*. § 3553(a)(2)(C), and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," *id*. § 3553(a)(2)(D);

- the "kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant" under the Sentencing Guidelines, *id*. § 3553(a)(4);

- "any pertinent policy statement . . . issued by the Sentencing Commission," *id*. § 3553(a)(5);

- the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," *id*. § 3553(a)(6); and

- "the need to provide restitution to any victims of the offense," *id*. § 3553(a)(7).

*See* 18 U.S.C. §3583(e) (citing 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4),

(a)(5), (a)(6), and (a)(7)). The court is not required "to make specific findings of fact with respect

to each of the Section 3553(a) factors." *United States v. Torres*, No. 21-2511, 2022 WL

17087048, at *3 (2d Cir., Nov. 21, 2022) (summary order). Rather, "a statement that the district

court has considered the statutory factors is sufficient." *Id*.

Because Section 3583(e) directs a court considering a motion for early termination of

supervised release to consider "any pertinent policy statement issued by the Sentencing

Commission," the court may also consider Section 5D1.4 of the United States Sentencing

Commission's Sentencing Guidelines ("Section 5D1.4"). U.S.S.G. § 5D1.4. This guideline

4

provides six factors for a court to consider in determining whether to grant early termination of a term of supervised release:

> (i)   any history of court-reported violations over the term of supervision;
>
> (ii) the ability of the defendant to lawfully self-manage (*e.g.*, the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges);
>
> (iii) the defendant's substantial compliance with all conditions of supervision;
>
> (iv) the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision;
>
> (v) a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and
>
> (vi) whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant.

U.S.S.G. § 5D1.4.

The defendant bears the burden to show that "termination is warranted." *United States v. Key*, 602 F.3d 492, 494 (2d Cir. 2010). "[R]eality should be determinative when assessing a motion for termination," and "post-supervised release rehabilitation is the relevant factor." *United States v. Morgan*, No. 1:24-cr-371, 2026 WL 391890, at *4 (E.D.N.Y. Feb. 12, 2026).

## DISCUSSION

The Court has conducted a careful review of the Section 3553(a) factors identified in Section 3583(e) and Section 5D1.4 factors and concludes that Curshen's supervised release should be ended at this time. As a threshold matter, Curshen has served 17 months of supervised release. (Motion at 1.) As such, he has satisfied the statutory requirement of serving at least one year of supervised release before moving the Court for early termination. *See* 18 U.S.C.

5

§ 3583(e)(1); *see also Rivera-Perez*, 171 F.4th at 208 (2d Cir. 2026) ("18 U.S.C. § 3583(e)(1) . . . allows a court (not an unspecified entity) to terminate a term of supervised release, but only after considering certain enumerated Section 3553(a) factors, and *only after one year of time served* on supervised release." (emphasis added)).

The relevant Section 3553(a) and Section 5D1.4 factors weigh strongly in favor of early termination. Curshen has substantially complied with all conditions of his supervision and has no history of any court-reported violations. Indeed, less than seven months into his supervision, the Eastern District of New York's Probation Department transferred Curshen to the Low Intensity Unit ("LIU"), a "designation reflecting the probation department's assessment that intensive supervision is no longer necessary or appropriate." (Motion at 2.) As Probation has acknowledged, "due to his overall compliance, Mr. Curshen has been supervised under the Low Intensity Unit since June 27, 2025. His assessed risk level is Low-1, which corresponds to a 3% arrest rate and a less than 1% revocation rate." (Probation Letter at 2.) Curshen has also fully paid all restitution, fines, and special assessments imposed as part of his sentences. (Motion at 3.) Significantly, he also has maintained an unblemished institutional record throughout his three years of pretrial release, nine years of incarceration in Bureau of Prisons' ("BOP") custody, and four and a half years in home confinement. (*Id*. at 1, 3.) *See United States v. Bennett*, No. 11-cr-424, 2021 WL 4798827, at *1 (E.D.N.Y. Oct. 14, 2021) (granting defendant's motion for early termination of supervised release where "the probation officers overseeing the defendant's supervised release confirm that he has complied with the terms and conditions of his supervision" and defendant has paid off the fines imposed against him).

Furthermore, Curshen has meaningfully displayed the ability to lawfully self-manage and engage in appropriate prosocial activities through his employment and volunteer work—conduct

that demonstrates rehabilitation. He has maintained consistent remote employment as a manager of a medical spa since late 2020. (Motion at 2–3.) Curshen first began working at the spa in an unpaid mentorship position and transitioned into salaried employment one year later. (*Id*. at 3.) This role requires Curshen to travel to Massachusetts on a four-to-six-week cycle for training, presentations, and business development. (*Id.*) Each time Curshen has had to travel to Massachusetts for work, he has timely and successfully provided a two-week advance written notice and obtained permission from his supervising officer to travel to Massachusetts. (*Id.*) In sum, Curshen has demonstrated a commitment to maintaining gainful employment, which supports termination of his supervised release. *See Morgan*, 820 F. Supp. 3d at 210 (finding that defendant's "pursuit of stable employment, and the fact that he was promoted from a temporary to permanent position with his employer . . . constitute appropriate prosocial activities" that favor early termination of supervised release).

Curshen also regularly volunteers his time in the service of others and his community. He remains active in his synagogue and works alongside his rabbi in building and managing a YouTube channel with nearly one thousand subscribers to assist the rabbi's efforts to expand the reach of his congregation. (Motion at 3.) He has also maintained thirty-three years of continuous sobriety and committed himself to assisting others who are struggling with sobriety. (*Id.*) Curshen attends multiple Narcotics Anonymous ("NA") meetings each week, sponsors individuals in recovery, and serves in volunteer leadership roles within the organization. (*Id.*) He also works with the NA Hospitals and Institutions Committee to expand programming into correctional facilities to help serve others who are struggling with sobriety. (*Id.*) Accordingly, the Court has no doubts regarding Curshen's ability to self-regulate and continue to engage in the prosocial behavior detailed above upon the termination of his supervised release.

In addition, there are no facts in the record that indicate that early termination of Curshen's supervised released will jeopardize public safety. Curshen was arrested on September 4, 2008, and sentenced to prison on charges of conspiracy, mail fraud, and money laundering on May 11, 2012. (Motion at 1.) Since his arrest in 2008, "his institutional record is unblemished: no disciplinary incidents during nine years of [Bureau of Prisons] custody and no violations during pretrial release nor during his four and a half years of GPS-monitored home confinement," and, notably, "Mr. Curshen received no violations during over sixteen months of his supervised release[.]" (*Id*. at 3.) As such, nothing in the record suggests that termination of Curshen's supervised release at this time will risk public safety. Rather, as detailed above, Curshen has built meaningful relationships and made valuable contributions in his community, and the record reflects that he will continue to do so. *See United States v. Fernandez*, No. 10-cr-905, 2025 WL 3687434 * at 2 (S.D.N.Y. Dec. 19, 2025) (finding that "[c]ontinued supervision . . . is not necessary to address the §3553(a) goals of deterrence, incapacitation, and rehabilitation" and defendant's "track record and his successful reintegration into society suggest a relatively low need to protect the public from further crimes of the defendant through continued supervision").

Continuation of Curshen's supervised release would hurt—not foster—his continued successful reintegration into the community and law-abiding behavior. Curshen's demonstrated commitment to his family, work, and civic and spiritual life demonstrate that he is on track to meaningfully transition back into his community and that continued supervision is no longer necessary. Indeed, "[d]enial of a request for early termination of supervised release by a defendant whose behavior has been good, who has reintegrated into society, and who satisfied all other conditions of supervised release, would suggest that the denial is for punishment and not

8

rehabilitation." *Hutchinson*, 577 F. Supp. 3d at 135; *see id.* (finding that the legislative history of supervised release confirms its primary purpose of fostering community reintegration); *Morgan*, 820 F. Supp. 3d at 212 (recognizing that the purpose of supervised release is to promote rehabilitation and community integration, not punishment). Moreover, Curshen's employment currently requires him to travel out of state regularly, and his elderly father and other relatives live out of state. Yet, pursuant to the terms of his supervised release, Curshen is required to seek and secure timely advanced notice before engaging in any out-of-state travel for these purposes. Although Curshen has fully complied with these requirements, continued supervised release including such travel restrictions threaten to hinder his employment and maintenance of family ties, both of which are integral to his reintegration into the community.

Accordingly, early termination of Curshen's supervised release "is warranted by the conduct of the defendant and the interests of justice," 18 U.S.C. § 3583(e)(1), and Curshen's continued supervision is no longer warranted under the relevant sentencing factors under 18 U.S.C. § 3553(a).

## CONCLUSION

For the reasons set forth above, Curshen's motion for early termination of supervised release is GRANTED.

Dated: Central Islip, New York
June 11, 2026

　　　*/s/ Nusrat J. Choudhury*
　　　NUSRAT J. CHOUDHURY
　　　United States District Judge

9